WATSON, Judge ad hoc.
Plaintiffs are property owners in a residential subdivision located in the City of Baton Rouge; defendants are Gulf States Utilities Company (hereinafter called “Gulf States”) and the Board of Adjustment of East Baton Rouge Parish (hereafter called the “Board”).
Plaintiffs bring two separate suits: the first seeking an injunction against Gulf States prohibiting this utility company from erecting an electric power substation on Lot 6 of a resubdivision of Lot 25, situated on the rear portion of Moss Side Place Subdivision, in the City of Baton Rouge; the second seeking the cancellation of an exception to the zoning classification granted by the Board permitting the construction of such substation. The two suits were consolidated for trial, and it is conceded that the parties at interest in the litigation are the plaintiffs and Gulf States.
Many of the facts are undisputed. It is established by the evidence taken in the trial court that engineering studies support the need of another substation between the general area of Lee Drive and Essen Lane, in order for Gulf States to properly serve the electrical users in this vicinity. Following their studies Gulf States purchased the site in question, and in late 1971 began the construction of the substation. Apparently no consideration was given by Gulf States to the fact that the property was zoned residential. Gulf States at some juncture learned that a substation and its use was not permitted at the subject locale under the zoning regulations, and, in order for its intended use of the property to be effectuated, an application was filed with the Board of Adjustment of East Baton Rouge Parish for the issuance of an exception to the zoning regulations.
On January 5, 1972 Gulf States applied to the Board, and, after a hearing on February 5, 1972 at which witnesses for both *340 sides appeared and gave evidence, the Board issued the requested exception on February 11, 1972 under the authority of Sec. 8:402(a) of the zoning ordinance, which permits the Board to grant an exception to the prescribed zoning classification on a finding of “compelling necessity for the use.”
The initial suit filed in District Court against Gulf States urged that the substation violated both the zoning laws and the Moss Side Place Subdivision restrictions. About one month later plaintiffs, realizing that the original suit would not accomplish in itself the relief desired, applied for a writ of certiorari, requesting a review of the Board’s decision under LSA-R.S. 33 4727.
After the consolidated cases were tried, the trial court reversed the action of the Board, holding that Gulf States had not made a showing of “compelling necessity.” The trial court in its reasons for judgment noted, in granting the exception to the zoning regulations, that the Board made no reference to any finding of “compelling necessity.” In defining this phrase, the trial court concluded that it meant “the absence of any alternative.” The judgment enjoined Gulf States from erecting the substation on the authority of the exception granted by the Board, and cancelled the Board’s order.
From this judgment Gulf States has appealed alleging errors by the trial court: (1) in reversing the decision of the Board, a quasi-judicial body, in the absence of any evidence rebutting the presumption of the validity of the Board’s action; (2) in holding that the terminology “compelling necessity” used in Sec. 8:402 of the Zoning Ordinance of the City of Baton Rouge and Parish of East Baton Rouge requires the showing of an “absence of any alternative” location before the Board can grant with propriety a valid exception to the zoning regulations.
 While the courts should not interject their opinions into zoning cases where the administrative agency has carried out properly the mandate of its governing ordinance or statute, the decisions of zoning boards are subject to judicial review, and where the board violates its ordinance, the courts will reverse. State v. Zoning Board of Appeal and Adjustment, 221 La. 941, 60 So.2d 880 (1952). If, for example, the test of granting a variance is “unusual hardship or difficulty,” the board is without authority to authorize a variance in the absence of such a showing. Uptown Improvement Ass’n v. Board of Zoning Adjust, 243 So.2d 345 (La.App. 4 Cir. 1971). Where the ordinance requires the showing of a “compelling necessity” as in the instant case we believe as did the trial court that the Board must require the applicant for an adjustment to make a showing of compelling necessity.
We find, after reviewing the record, that we agree with the analysis of the trial court. We quote with approval the reasons assigned for reversing the Board:
“The authority for permitting a variation in the use of residential property is found in Section 8:402 of the Zoning Ordinance of the City of Baton Rouge and Parish of East Baton Rouge. This section provides in part that one of the recognized exceptions is the ‘use of premises for public utility and railroad purposes; provided that the Board shall find some compelling necessity for the use . . .’ Unfortunately, in its written reasons for the decision to grant the requested variation, the Board of Adjustment made no reference to a finding of compelling necessity. This opinion reads in pertinent part:
‘It is the opinion of the Members of the Board of Adjustment after inspection of the said property and the holding of the public hearing in which we listened to both parties concerned, that we will grant Gulf States the right to continue construction of the sub-station.
We believe that because of the distance of the sub-station from any local residents that it will not decrease real estate *341 values in this area along with the fact that Gulf States will landscape the entire sub-station site.’
“The Court is therefore faced with the necessity of deciding whether the above constitutes a finding of ‘compelling necessity’, and if not, whether the defendant made a sufficient showing of ‘compelling necessity’ to sustain the decision.
“The Court has not been cited any cases, nor has it been able to locate any construing the term ‘compelling necessity’. As a consequence, the Court must necessarily resort to other means of interpretation.
“Webster’s Seventh New Collegiate Dictionary defines necessary and necessity as follows:
‘Necessary — la of an inevitable nature: INESCAPABLE b(l): logically unavoidable (2)that cannot be denied without contradiction c: PREDETERMINED d:
COMPULSORY 2: absolutely needed: REQUIRED
Necessity — 1: the quality or state of being necessary: INDISPENSABILITY 2a: pressure of circumstance b: natural compulsion (physical) c: impossibility of a contrary order or condition 3: the quality or state of being in need: esp: POVERTY 4a: something that is necessary : REQUIREMENT b: an urgent need or desire’
Webster’s New International Dictionary defines compelling as:
‘Forcing attention, acquiescence or obedience; having irresistible attraction or urgency . . . ’
It can therefore be seen that the enactors of Section 8:402 envisioned a finding which contemplates the absence of any alternative, and means much more than mere convenience or desirability.
“The Court has examined the minutes of the Board of Adjustment meeting, and has considered in detail the evidence presented before it. It concludes that while defendant has shown a need for a substation in the area of Moss Side Place and the appropriateness of this particular site, it has not shown the compelling necessity required by the Zoning Ordinance.
“This conclusion makes it unnecessary to consider the point of the violation of the restrictions of the subdivision. Nevertheless, in order to make the case complete, the Court makes the following observations: There can be little question but that an expropriating body or corporation will not be prevented from utilizing private property by the presence of restrictive covenants. LSA R.S. 19:1, Rev.Civ.Code Art. 2626. With respect to a voluntary conveyance, however, the issue is not so clear. A dis-positive finding on this point does not seem to have been made by our courts, and decisions in other jurisdictions are significant only in that they too apparently concede an expropriation is not barred by restrictions, and differ only on the question of whether the property owners who enjoy said restrictions are entitled to damages as a consequence of the taking. This being the present state of the jurisprudence, the Court is of the opinion that there is no basis in reason to distinguish the instance where a public utility chooses to purchase from the instance where it elects to expropriate. The same result should attach, and this Court so holds.
“While there was a rule issued in Suit No. 154,390, that rule was passed and the suit was consolidated with No. 154,815 and heard on the merits.
“For the above reasons there will be judgment herein in Suit No. 154,390, enjoining and prohibiting defendant, its agents or employees and all other persons, firms or corporations acting or claiming to act in its behalf from proceeding with the construction of an electrical transformer substation in Moss Side Place on the authority of the Board of Adjustment opinion rendered on February 11, 1972.
*342 “In Suit No. 154,815, there will be judgment herein reversing and nullifying the decision of the Board of Adjustment.”
The judgment of the trial court is affirmed at appellant’s costs.
Affirmed.
TUCKER, J., dissents and assigns reasons.